# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOAN HROBUCHAK, on her own behalf and on behalf of all others similarly situated, | CIVIL ACTION NO. 3:10-CV-481 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Defendant, | |

## MEMORANDUM

Presently before the Court is the Motion to Dismiss of Defendant Federal Insurance Company ("Federal"). (Doc. 23.) For the reasons discussed more fully below, this motion will be denied.

## BACKGROUND

The facts alleged in the Complaint and deduced from the attachments to the Complaint are as follows. Plaintiff Joan Hrobuchak is the representative for a class of plaintiffs who were allegedly subjected to unlawful debt collection practices by American Corrective Counseling Services, Inc. ("ACCS"). Federal issued a professional liability insurance policy to ACCS for a period running from October 29, 2007 to October 29, 2008; this policy had a $2,500,000 liability limit and a $500,000 class claim deductible.

Victor Cataquet was the named plaintiff in a purported class action filed ("the underlying suit") against ACCS on June 20, 2008 in the United States District Court for the Middle District of Pennsylvania, alleging violations of the Federal Fair Debt Collection Practices Act, the Pennsylvania Fair Credit Extension Uniformity Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and the Due Process Clause of the

Fourteenth Amendment; Plaintiff was permitted to intervene as the putative class representative on January 5, 2009. Federal denied coverage for the underlying suit under its policy with ACCS.

On January 19, 2009, ACCS filed for Chapter Eleven bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. On November 2, 2009, the bankruptcy court entered a Judgment Allowing Proof of Claim against ACCS and in favor of the class. That document stated that "judgment is in the amount of $2,550,000.00 and is entered in favor of [Plaintiff class] against Debtor American Corrective Counseling Services, Inc." The document also states that the Plaintiff class "may immediately proceed to enforce the Judgment against the Debtors' insurance policy, pursuant to, and as limited by, the First Amended Plan of Liquidation of [ACCS]."

On February 16, 2010, Plaintiff filed the instant suit against Federal in the Court of Common Pleas of Lackawanna County, seeking certification as a class action suit, declaratory relief stating that ACCS' actions were covered by its policy with Federal, damages, and attorney's fees. The case was removed to this Court on March 3, 2010. On April 15, 2010, Defendant filed the instant Motion to Dismiss. After the Motion to Dismiss was granted, Plaintiff filed an Amended Complaint on June 30, 2010. (Doc. 20.), followed by Defendant's Motion to Dismiss on August 6, 2010. (Doc. 23.) The issues have been fully briefed by both sides and the Motion is ripe for review.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not

pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## **DISCUSSION**

In its Motion to Dismiss, Defendant raises both procedural and merits-based challenges to Plaintiff's Complaint. Defendant claims both that the Plaintiff lacks standing to bring the instant suit, and that the insurance policy issued by Defendant does not provide coverage for the underlying litigation. Both issues will now be addressed in turn.

### I.     **Plaintiff's Standing to Bring Suit**

Plaintiff has standing to bring suit under 40 P.S. § 117.

Under Pennsylvania law, a person may not directly sue an insurer to recover on a judgment rendered against the insured absent a statute or policy provision on which the right to directly sue is predicated. *Kollar v. Miller*, 176 F.3d 175, 181 (3d Cir. 1999) (citing *Philadelphia Forrest Hills Corp. v. Bituminous Casualty Corp.*, 222 A.2d 493, 494 (Pa. Super. 1966)). Pennsylvania does have a direct action statute. 40 P.S. § 17 states:

> No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power and for which

4

loss or damage the person insured is liable, shall hereafter be issued or delivered in this State by any corporation, or other insurer, authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation, under the terms of the policy, for the amount of the judgment in the said action, not exceeding the amount of the policy.

Defendant contends that this statute only applies to claims arising out of motor vehicle accidents and the like, but the plain language of the statute is clearly not so narrowly drawn. In pursuing their narrow reading of the statute, Defendant focuses on the "against loss or damage to property caused by animals or by any vehicle" language of the first sentence, but fails to take note of the conjunction "or" which prefaces the subordinate clause. When the clause is read in full, it is clear that it is not limited to liability claims arising solely from motor-vehicle accidents. Furthermore, this reading is supported by case law finding that the statute in not to be interpreted so narrowly. *Philadelphia Forrest Hills Corp. v. Bituminous Cas. Corp.*, 208 Pa.Super. 461 (Pa. Super. Ct. 1966) (holding that 40 P.S. § 117 indicates a state policy of protecting injured third parties). Having now included a copy of the First Amended Plan of Liquidation of ACCS in their Amended Complaint, showing that the judgment was not satisfied by ACCS, Plaintiff has met the statutory requirements and demonstrated that she has standing under 40 P.S. § 117 to bring suit against Defendant.

5

## II. Terms of the Insurance Policy

### A. The Nature of the Federal Policy

The underlying litigation is not excluded from coverage on account of the nature, or type, of policy issued to ACCS by Defendant. The policy at issue is a "claims made" policy, which means that both the claim be made and the wrongful conduct underlying the claim occur during the policy period.

The Declarations Page of the policy states that: **"THIS IS A CLAIMS MADE AND REPORTED POLICY"**. (Pl. Ex. H.) The "Insuring Clause" of the policy goes on to state that:

> The Company shall pay **Loss** on behalf of the **Insureds** resulting from any **Claim** first made against such **Insureds** and reported to the Company in writing during the **Policy Period** . . . for **Wrongful Acts** committed by the **Insureds** solely in the performance of or failure to perform **Insured Services** on or after the Prior Acts Date set forth in Item 7 of the Declarations before the Policy terminates.

Id.

The Prior Acts date is October 29, 2007. In the underlying litigation, Plaintiff Cataquet alleged he had written what turned out to be a bad check on January 8, 2008, and that he was contacted by ACCS a short time later. Both the alleged wrongful act and the claim took place and were reported during the policy period. Defendant argues that since this alleged wrong conduct pre-dated the policy period, coverage should be excluded, but this is inconsequential since the acts were also allegedly committed within the policy period as well. As a result, the fact that the policy at issue is a "claims made" policy does not exclude the

6

underlying litigation from coverage by Defendant.

### B. The "Related Claims" Provision in the Policy

The "Related Claims" Provision in the policy does not exclude the claims in the underlying litigation from coverage. Defendant's argument is that the claims in the underlying litigation are related to claims made in other suits prior to the relevant policy period, and, as a result, are excluded from coverage.

In the "Reporting" provision of the policy, under "Interrelationship of Claims," it states that: "[a]ll **Related Claims** will be treated as a single Claim made at the time the first of such **Related Claims** was made." (Pl. Ex. H.) "Related Claims" are defined as:

> all Claims for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

Id.

"Arising out of" or "arising from" has been interpreted by the Pennsylvania Supreme Court to mean *causally connected with*. *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901 (Pa. 1967).

Defendant asserts that the claims in the underlying litigation are related claims to suits that fall outside the policy period because they involve the same or related facts, circumstances, situations and events. Namely, all the suits allege that ACCS is debt-collection business that operates in conjunction with local district attorney's offices to run bad check diversionary programs and commit various abuses and wrongful acts in running these programs. However, to agree with Defendants on such a broad conception of the meaning

7

of the term, "the same," would render the policy essentially a nullity, as any suit brought against ACCS would almost by definition involve their core business model.

To muster strength for its argument, Defendant points to *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 1992 WL 142024 (E.D. Pa. 1992). However, this case is of little help, since, unlike the underlying litigation in the instant suit, that case involved two suits concerning the *exact same issue*, i.e., the development of a particular piece of property, in which one suit was brought under state law and the other brought federal claims. Of course, in the underlying litigation to the instant suit, as in the others, ACCS and their business practices are at issue, but the underlying litigation here involves a different time frame, different states, different state penal laws, different plaintiffs, and different arrangements with the district attorneys. One suit over your business practices in one state does cannot mean that your insurer is forever immune from having to extend coverage in future suits.

### C. The "Prior Pending" Exclusion

The "Prior Pending" Exclusion to the policy does not preclude coverage. This Exclusion states that:

> No coverage will be available under this Policy for any Claim against an Insured. . . based upon, arising from, or in consequence of any written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any Insured on or prior to the inception date of this Policy . . . or the same or any substantially similar fact, circumstance or situation underlying or alleged therein[.]

Pl. Ex. H.

In arguing that this exclusion applies, Defendant relies on *Universal Teleservices Arizona, LLC v. Zurich Am. Ins. Co.*, 879 A.2d 230 (Pa. Super. Ct. 2005). In that case, again, the "prior litigation" was over the *exact* same facts. In the underlying litigation in the instant

8

suit, while there are factual and circumstantial similarities between it and those facts in the prior suits, those similarities, according to Defendant, are essentially that ACCS was operating a bad check diversion program in conjunction with local district attorneys. But again, those suits involved different plaintiffs in different states, in different arrangements between ACCS and different district attorneys, implicating different state laws. To read the "Prior Pending" Exclusion as broadly as the Defendant desires would be to completely vitiate the purpose of the policy, i.e. the insuring of the administration of bad check diversion programs. (Pl. Ex. H.)

### D. Endorsement No. 8 of the Policy

Coverage for ACCS is not precluded by Endorsement No. 8 of the policy. Endorsement No. 8 states that:

> [i]t is agreed that no coverage will be available under this Policy for any Claim against an Insured based upon, arising from, in consequence of, relating to, or in any way involving any proceeding set forth below, or substantially the same facts, circumstances, or Wrongful Acts alleged in the pleadings of such proceeding:
>
> ACCS vs: Ilowa: Liles
>    Georgia: Callahan
>    Florida: Rosario
>    Indiana: Vanduyn
>    Indiana: Hamilton
>    Illinois: Barnhart
>   California: Del Campo/Medina

Id.

Defendant claims that the language of this Exclusion is even broader than that of the "Prior Pending" Exclusion, and should therefore preclude ACCS from coverage even if the prior Exclusion did not. This Court disagrees.

9

In *Lexington Ins. Co. v. Am. Corrective Counseling Serv.*, Case No. BC 352052 (Cal. Super. Ct. 2008), the Superior Court of California dealt with an almost identical "Related Claims" provision. In finding that the provision did not exclude ACCS from coverage, the court stated that:

> To find otherwise would be to conclude that Lexington, in writing its first policy for ACCS, wrote a policy which in effect, acted to exclude coverage for lawsuits alleging FDCPA-related violations in connection with running ACCS' *sole* business of operating bad check diversion programs. As described by defendants in their points and authorities, this is tantamount to an *illusory* policy.

*Lexington Ins. Co.*, p. 4 (italics added).

Although not bound by this ruling, this Court finds its logic persuasive. Again, if we were to follow Defendant's argument here, the natural question would be, if any claims related to the administration of the bad check diversionary program, ACCS' sole business, were excluded under the terms of the policy, what exactly was the Defendant insuring?

Finally, Defendant also invokes Exclusions A(13) and (14), which exclude coverage for claims based on unfair trade practices and claims based on fraud or willful violation of a statute. While this Court agrees with Defendant that Exclusion A(13) does exclude from coverage that part of the claim in the underlying litigation that invokes the Pennsylvania Unfair Trade Practices and Consumer Protection Law, A(14) does not apply because the rest of the underlying litigation deals exclusively with claims brought under the Fair Debt Collection Practices Act, not fraud claims, and there is no allegation that ACCS' conduct was willful anywhere in the complaint.

.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motions to Dismiss will be denied. An appropriate order follows.


 10/21/10                                                             /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOAN HROBUCHAK, on her own behalf and on behalf of all others similarly situated, | CIVIL ACTION NO. 3:10-CV-481 |
| Plaintiffs, | (JUDGE CAPUTO) |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Defendant, | |

## ORDER

**NOW**, this ___21st___ day of October, 2010, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 23) is **DENIED**.

                                                    /s/ A. Richard Caputo
                                                    A. Richard Caputo
                                                    United States District Judge