**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOAN HROBUCHAK and** : | |
| **KAREN MAGHRAN, on their own** | |
| **behalf and on behalf of all others** : | |
| **similarly situated,** | **CIVIL ACTION NO. 3:10-0481** |
| : | |
| **Plaintiffs** | **(JUDGE MANNION)**[1] |
| : | |
| **v.** : | |
| : | |
| **FEDERAL INSURANCE COMPANY,** | |
| : | |
| **Defendant** | |
| : | |

**<u>MEMORANDUM</u>**[2]

Presently before the court are a motion to vacate the judgment of United States Bankruptcy Court for the District of Delaware (hereinafter "the Bankruptcy Court"), (Doc. No. 67), a motion to certify a plaintiff class, (Doc. No. 45) and motions for summary judgment filed by both the plaintiffs, (Doc. No. 68), and the defendant, (Doc. No. 71). Finding no grounds on which to vacate the judgment entered by the Bankruptcy Court, this court will deny the motion to vacate. Moreover, finding that the Bankruptcy Court's ruling

---

[1] The instant case was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 4, 2013, the matter was reassigned to the undersigned.

[2] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

includes the certification of a class pursuant to [Federal Rule of Civil Procedure 23](), the court finds the motion to certify the plaintiff class to be moot. The court will grant plaintiffs' motion to the extent that the court finds the judgment of the Bankruptcy Court to be valid. The court will not, however, enter the damage amount as requested. The court will grant the defendant's motion for summary judgment in part and deny it in part regarding the scope of the policy coverage as discussed below.

**BACKGROUND**

The plaintiffs represent a class of plaintiffs who were allegedly subject to unlawful debt collection practices by American Counseling Services, Inc. (hereinafter "ACCS") in the Commonwealth of Pennsylvania. The defendant, Federal Insurance Company, issued an errors and omissions insurance policy to ACCS for a period running from October 29, 2007 to October 29, 2008 (hereinafter "the Policy"). The Policy contained a $2,500,000.00 limitation on liability and $500,000.00 class claim deductible. (Doc. No. [70](), Att. 1)

On June 20, 2008, Victor Cataquet filed a purported class action in the United States District Court for the Middle District of Pennsylvania against ACCS regarding the unlawful practices (hereinafter "the *Cataquet* Action"). The complaint alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), the Pennsylvania Fair Credit Extension Uniformity Act ("PFCEU"),

2

the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

On January 19, 2009, ACCS filed for protection under Chapter Eleven of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. In light of the bankruptcy proceedings, the *Cataquet* Action was stayed without a class having been certified in the action. On January 15, 2009, the Bankruptcy Court entered a Judgment Allowing Proof of Claim, (hereinafter "the Judgment"), (Doc. No. 70, Att. 7 at 18). The Judgment states that it is "in the amount of $2,550,000.00 and is entered in favor of the PA Class Action Claimants against Debtor American Corrective Counseling Services, Inc." (Id.). The "PA Class Action Claimants" are defined as:

> the holders of PA Class Action claims and consist of all individuals who have been informed by Debtor American Corrective Counseling Services, Inc. that they have or allegedly have violated the provisions of the Pennsylvania Crimes Code pertaining to the issuance of bad checks, 18 Pa. C.S. §4105, and have been subject to debt collection as a result.

(Id.). In addition, the Judgment provided that: "the PA Class Representatives may immediately proceed to enforce the Judgment against the Debtors' insurance policy pursuant to, and as limited by, the First Amended Plan of Liquidation..." (Id.).

On November 2, 2009, the Bankruptcy Court entered an order confirming the First Amended Plan of Liquidation (hereinafter "the Order"),

3

(Doc. No. 70, Att. 7), which gave effect to the Judgment and incorporated the provisions of the First Amended Plan of Liquidation (hereinafter "the Liquidation Plan"), (Doc. No. 70, Att. 6). With respect to the class certification and the Judgment, the Order further states that:

> In accordance with paragraph 19, the Judgment Allowing Proof of Claim to be entered in conjunction with this Order and, in consideration of the prerequisites for certification of Bankruptcy Rule 7023 and F.R.C.P. 23, as addressed in the Declaration of PA Class Counsel, a class consisting of PA Class Claimants is hereby certified for purposes of the Judgment and its execution in accordance with the terms of the Plan. The class includes all individuals who have been notified by Debtor American Corrective Counseling Services, Inc. that they have or allegedly have violated the provisions of the Pennsylvania Crimes Code pertaining to the issuance of bad checks, 18 Pa.C.S. §4105.

(Doc. No, 70, Att. 7 at 16). On February 16, 2010, the plaintiffs filed the instant action to enforce the Judgment against the defendant in the Court of Common Pleas of Lackawanna County. (Doc. No. 2). The plaintiffs seek the declaratory judgment that the Judgment indeed falls within the scope the Policy, that court enter damages in the amount of $2,000,000.00, and award the plaintiffs reasonable attorneys fees and costs. On March 3, 2010, the case was removed to this court. (Doc. No. 1).

On April 15, 2010, the defendant filed a motion to dismiss, (Doc. No. 8). The plaintiffs subsequently filed an amended complaint, (Doc. No. 20). The defendant then filed a second motion to dismiss, (Doc. No. 23). On October 21, 2010, Judge Caputo issued a memorandum and order denying the motion to dismiss. Judge Caputo found that the plaintiffs had standing to bring the

action under Pennsylvania's direct action statute, [40 Pa. C.S. §117](), and that the defendant's arguments that four policy provisions excluded coverage were unavailing. Specifically, Judge Caputo found: first, that Victor Cataquet's original claims were timely under the "claims made and reported" nature of the Policy; second, the underlying claims in this matter are not sufficiently related to prior litigation in other jurisdictions so as to exclude coverage under the "related claims" provision; third, the claims were similarly not barred by the "prior pending" litigation exclusion and; fourth, Endorsement No. 8 of the Policy, which excludes coverage for claims related to seven specific FDCPA cases did not bar recovery on the instant claims.

On November 11, 2010, the defendant filed a motion for reconsideration of the court's order, (Doc. No. [34]()), and brief in support, (Doc. No. [35]()), arguing that the court had interpreted [40 Pa. C.S. §117]() too broadly and that such an interpretation was a clear error of law. On December 13, 2010, the court issued and memorandum and order denying the motion to reconsider, (Doc. No. [38]()), on the grounds that the defendant had failed to raise any new arguments related to the scope of the statue not previously raised in its unsuccessful motion to dismiss.

Presently before the court are four motions filed since the resolution of the defendant's motion to dismiss. On March 4, 2011, the plaintiffs filed a motion to certify the class, (Doc. No. [45]()), and brief in support, (Doc. No. [46]()).

On May 5, 2011, the defendant filed a brief in opposition, (Doc. No. 51). On June 1, 2011, the plaintiff filed a brief in reply, (Doc. No. 52). On June 22, 2011, with leave of the court, the defendant filed a sur reply, (Doc. No. 56).

On May 9, 2012, the defendant filed a motion to vacate, or in the alternative, obtain relief from, the confirmation order and judgment allowing proof of claim pursuant to Fed. R. Civ. P. 60(b)(4), (Doc. No. 67). On June 4, 2012, the plaintiffs filed a brief in opposition, (Doc. No. 76). On June 21, 2012, the defendant filed a brief in reply, (Doc. No. 84).

Also on May 9, 2012, both the plaintiffs and the defendant filed motions for summary judgment. The plaintiffs filed their motion, (Doc. No. 68), brief in support, (Doc. No. 69), and a concise statement of material facts, (Doc. No. 70). The defendant filed a brief in opposition on June 11, 2012, (Doc. No. 81), as well as an answer to the statement of facts, (Doc. No. 82), and a declaration including several exhibits, (Doc. No. 83). On June 28, the plaintiffs filed a reply brief, (Doc. No. 88), and a declaration, (Doc. No. 90).

The defendant's motion for summary judgment, (Doc. No. 71), was supported by a brief, (Doc. No. 72), and a statement of material facts, (Doc. No. 73). On June 11, 2012, the plaintiffs filed a brief in opposition, (Doc. No. 79), and answer to the statement of facts, (Doc. No. 80). On June 28, 2012, the defendant filed a brief in reply, (Doc. No. 89). The court denied the plaintiffs' motion to file a sur reply, (Doc. No. 92).

These motions remained open at the time the case was reassigned to the undersigned in January of 2013.

**DISCUSSION**

This court has been presented with a final judgment from the United States Bankruptcy Court for the District of Delaware. (Doc. No. 70, Att. 6-7) *See generally, United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S. Ct. 1367, 1376, 176 L. Ed. 2d 158 (2010)*(citing *In re Optical Technologies, Inc., 425 F.3d 1294, 1300 (C.A.11 2005)*). This court does not sit as a court of appeals for the United States Bankruptcy Court for the District of Delaware. *See* 28 U.S.C.A. §158. Moreover, the Bankruptcy Court specifically retained jurisdiction over many of the issues the defendant now attempts to couch as questions of policy coverage. Section 22 of the Order incorporates Article 9 of the Liquidation Plan, which provides for the retention of jurisdiction by the Bankruptcy Court and reads, in pertinent part:

> From and after the Confirmation Date, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, but not limited to, for the following purposes:
>
> ...1. To hear and determine any and all objections to the allowance of a Claim....
>
> ...6. To hear and determine any an all motions and/or objections to fix and allow any Claims arising therefrom;
>
> ...9. To interpret and determine any and all disputes arising under or regarding interpretation of the Plan or any agreement,

> document, or instrument contemplated by the Plan, and enforce any such determinate;
>
> ...11. To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan.

(Doc. No. 70, Att. 6 at 48). This court is bound by the principles of comity in examining the judgment before it. Beyond the defendant's challenge to the jurisdiction of the Bankruptcy Court, which would render the Judgment a nullity, the court will not entertain collateral attacks on the Judgment itself. Rather, the court will rule only on the scope of the Policy's coverage. The court will not, however, affect the judgment of the Bankruptcy Court who retains jurisdiction over issues related to the certification of the class, the rendering of the award and the calculation of damages.

### I. Motion to Certify the Class Action

The court finds the motion to certify the plaintiff class to be moot because the Bankruptcy Court already certified the plaintiff class as part of the Order. (Doc. No. 70, Att. 7). The Bankruptcy Court's Order reads:

> Entry of Judgment and Class Certification: In accordance with paragraph 19 [Approval of Compromise and Settlement], the Judgment Allowing Proof of Claim to be entered in conjunction with this Order and, in consideration of the prerequisites for certification of Bankruptcy Rule 7023 and F.R.C.P. 23, as addressed in the Declaration of PA Class Counsel, a class consisting of PA Class Claimants is hereby certified for

purposes of the Judgment and its execution in accordance with terms of the Plan. The class includes all individuals who have been notified by Debtor American Corrective Counseling Services, Inc. that they have or allegedly gave violated the provisions of the Pennsylvania Crimes Code pertaining to the issuance of bad checks, 18 Pa.C.S. §4105.

(Doc. No. 70, Att. 7 at 16). The Bankruptcy Court's order clearly states that it certified the plaintiff class pursuant to Federal Rule of Procedure 23, which is the same standard this court would apply. It is this certified class, the PA Class Claimants, that the Liquidation Plan "authorized to pursue a declaratory relief action against the Debtor's insurance carrier to determine whether the monetary claims asserted in the PA Class Action, and settled herein, are covered by the Debtor's prepetition insurance policy." (Doc. No. 70, Att. 6 at 27). This court is charged with determining whether underlying conduct falls within the scope of the insurance policy issued by the defendant to ACCS. The class of plaintiffs who may potentially collect from the Policy has already been certified. The plaintiffs' motion is therefore moot and any challenges to class certification raised by the defendant are not properly before this court.

## II. Motion to Vacate the Judgment of the Bankruptcy Court

The defendant brought a motion to vacate the Judgment pursuant to Federal Rule of Civil Procedure 60(b)(4). (Doc. No. 67). The defendant argues that the Judgment is void because the Bankruptcy Court lacked subject matter jurisdiction over the action and lacked personal jurisdiction over the

absent class members, thereby failing to provide due process. The court finds no grounds on which to vacate the ruling of the Bankruptcy Court.

Federal Rule of Civil Procedure 60(b)(4) provides for relief from void final judgments and reads, in pertinent part:

> Rule 60. Relief from a Judgment or Order
>
> ...(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> ...(4) the judgment is void.

Fed. R. Civ. P. 60(b)(4). "A judgment may indeed be void, and therefore subject to relief under 60(b)(4), if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered a decree which is not within the powers granted to it by the law." *Marshall v. Bd. of Ed., Bergenfield, N. J.*, 575 F.2d 417, 422 (3d Cir. 1978)(citing *United States v. Walker*, 109 U.S. 258, 265-67, 3 S.Ct. 277, 282, 27 L.Ed. 927 (1883))(internal quotations omitted). However, "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 1377-78, 176 L. Ed. 2d 158 (2010)(citing *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). Regardless, "[a] judgment is not void, for example, simply because it is or may have been

erroneous." *Id.* (citing *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir.1995); 12 J. Moore et al., MOORE'S FEDERAL PRACTICE § 60.44[1][a] (3d ed.2007)). Finally, and quite importantly, "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *Id.*

The court finds that the Bankruptcy Court had subject matter jurisdiction over the proceeding and finds no occasion to vacate the judgment on due process or personal jurisdiction grounds because the Bankruptcy Court found that all notice requirements had been met.

The defendant argues at length that because there was no formal transfer of the *Cataquet* Action to the Bankruptcy Court, the Bankruptcy Court lacked subject matter jurisdiction to certify a class and render judgment in the form of a class settlement. The court finds this argument to be misplaced. On January 19, 2009, ACCS and its parent corporations filed voluntary petitions for relief under Chapter Eleven of the Bankruptcy Code in the Bankruptcy Court. This action triggered an automatic stay of the pending *Cataquet* Action under §362 of the Bankruptcy Code.

On May 14, 2009, Victor Cataquet and Plaintiff Hrobochak filed a class proof of claim in the bankruptcy action. Although the plaintiffs and purported class were identical in the *Cataquet* Action and the bankruptcy proof of claim action, there was, in fact, no legal relationship between the classes. Therefore, the Bankruptcy Court had general jurisdiction under 28 U.S.C.

§157(b)(1), which provides that "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. §157(b)(1).

Faced with a purported class proof of claim in the voluntarily filed Chapter Eleven matter before it, the Bankruptcy Court relied upon its general jurisdiction over the matter and applied Federal Rule of Bankruptcy Procedure 7023 and certified the proof of claim class under the standard of Federal Rule of Civil Procedure 23. The court reiterates that its role in this matter is not that of an appellate body; however, in tracing the Bankruptcy Court's procedure the court finds that the Bankruptcy Court did indeed have jurisdiction to certify the class before it. In sum, although the purported classes in the *Cataquet* Action and the bankruptcy proof of claim were identical for all intents and purposes, the Bankruptcy Court certified a class proof of claim which it unquestionably had jurisdiction to do without any transfer of the *Cataquet* Action. As such, the court will not grant the defendant's motion to vacate for lack of subject matter jurisdiction.

With respect to the argument that the Bankruptcy Court lacked personal jurisdiction over absent class members and thereby violated due process, the court similarly finds that defendant has failed to show any conduct by the

Bankruptcy Court that would warrant vacating the Judgment currently before this court. In the Order, the Bankruptcy Court certified the "PA Class" and specifically acknowledged that it did so "in consideration of the prerequisites for certification of Bankruptcy Rule 7023 and F.R.C.P. 23." (Doc. No. 70, Att. 7 at 16). The record contains no definitive evidence as to the form or distribution of notice specifically purported to notify class members for purposes of Rule 23. The defendant now asserts that the Bankruptcy Court, in fact, failed to comply with notice provisions under Rule 23.

The court, however, finds this to be little more than a misplaced attempt to appeal the Bankruptcy Court's class certification. Rule 60(b)(4) provides relief from judgment's rendered in the absence of due process; however, it is "not a substitute for a timely appeal." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. at 1377, 176 L. Ed. 2d 158 (2010). The defendant is attempting to allege a due process challenge on behalf of the absent members of the plaintiff class in order to defeat the Judgment now brought against it. This is not, as is the case in many Rule 60(b)(4) motions, an instance where a defendant seeks to demonstrate that it was not subject to personal jurisdiction and therefore did not meaningfully participate in an underlying judgment and should not be bound. *See generally Budget Blinds, Inc. v. White*, 536 F.3d 244 (3d Cir. 2008). Rather, the instant defendant is challenging whether adequate notice was given during the months in which

13

the PA Class representatives and ACCS actively negotiated settlement at the limits of the insurance policy now under scrutiny. The court finds the due process arguments raised in the defendant's motion to vacate to be an untimely appeal of the Bankruptcy Court's notification procedures and order, but not a due process violation that warrants vacation by this court. As such, the motion to vacate will be denied.

### III. Motions for Summary Judgment

#### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the

14

matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249*; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry

of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *see also Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## B. The Plaintiffs' Motion for Summary Judgment

Pending before this court is the plaintiffs' motion for summary judgment, (Doc. No. 68). The plaintiffs argue that no genuine issues of material fact remain regarding the issue of whether the Judgment is a covered loss under the Policy. The plaintiff's therefore request "that this Court enter summary judgment on this issue of coverage." (Doc. No. 69 at 16). The court has considered the plaintiffs' motion independently; however, because the burden lies on the defendant to demonstrate exclusions from coverage, discussion of the defendant's motion for summary judgment provides a preferable framework for explaining the courts findings as to the scope of policy coverage and, in turn, the court's ruling as to the plaintiffs' motion. *See Young Sook Pak v. Alea London Ltd.*, 2009 WL 2366549 (M.D. Pa. July 30, 2009)(citing *Northern Ins. Co. v. Aardvark Assocs.*, 942 F.2d 189, 194 (3d Cir.1991)).

## C. Defendant's Motion for Summary Judgment

The defendant's motion for summary judgment is divided into four general arguments: first, that the plaintiffs lack standing to bring suit; second, that the defendant has no duty to indemnify the plaintiffs based on the

language of the Policy; third, that the plaintiffs have failed to demonstrate any allocation of the judgment between covered and non-covered activities and; fourth, that the settlement was unreasonable. (Docs. No. 71; 72). The court finds that many of the defendant's arguments extend beyond the scope of this court's inquiry into the coverage of the insurance contract. The court will evaluate each of the defendant's contentions in turn, but to the extent the defendant's motion attacks the determinations and calculations of the Bankruptcy Court, the court finds no occasion to disturb the Judgment entered by the Bankruptcy Court and will not grant the motion on such grounds.

### i. Standing

#### a. Plaintiffs' Standing Under the Pennsylvania's Direct Action Statute

For a third time in this matter, the defendant argues that the plaintiffs lack standing under Pennsylvania's direct action statute, 40 Pa. C.S. §117. Pennsylvania's direct action statutes states:

> No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, or against loss or damage to property caused by animals or by any vehicle drawn, propelled or operated by any motive power and for which loss or damage the person insured is liable, shall hereafter be issued or delivered in this State by any corporation, or other insurer, authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy...

17

[40 Pa. C.S. § 117](#). In his memorandum and order dated October 21, 2010, (Doc. No. [33](#)), Judge Caputo denied the defendant's motion to dismiss with respect to standing under this statute. Judge Caputo examined both the text of the statute itself and the public policy surrounding its creation and found that Pennsylvania's direct action statute covers a broader spectrum of "losses" than the defendant argued and therefore applies in the instant case. The defendant then challenged this ruling by filing a motion for reconsideration and a brief, (Docs. No. [34](#); [35](#)), which again advocated a narrower reading of the statute. The motion was denied.

The defendant now brings yet another challenge to standing under the same provision. The defendant focuses now on an alternate portion of the statute and argues that the statue only applies to insurance polices "issued or delivered" in Pennsylvania. The defendant argues that it was not aware until discovery that the Policy was not issued or delivered in Pennsylvania.

The court is not inclined to entertain a third challenge to the plaintiffs' standing to bring suit, let alone a third challenge based on the same statute. The defendant raised its arguments as to the applicability of Pennsylvania's direct action statute and Judge Caputo found that the statute applied. The court does not find that the defendant's new focus, another clause of the statue, to be compelling evidence that standing under this statute has not been fully decided by the court. Moreover, the court is unmoved by the

defendant's claim that it, as a party to the insurance policy at issue, was without knowledge of the Policy's place of issuance and delivery before discovery. The court will not reexamine the issue of standing under Pennsylvania's direct action statute. Ultimately, however, this issue is not of critical import as the court also finds that the Judgment and Liquidation Plan operated as an assignment of rights giving the plaintiffs independent standing to bring their claims.

### b. Assignment of Policy Rights

The court finds that the language of the Liquidation Plan, as adopted by the Judgment, operated as an assignment of ACCS's rights under the Policy to the plaintiff class and, therefore, the plaintiffs have standing to bring the instant declaratory judgment action. The defendant argues that the court already determined that the plaintiffs did not have direct standing to sue because there was no assignment provision in the Policy. (Doc. No. 17). At the motion to dismiss stage, however, the court did not have the Judgment and Liquidation Plan before it. The court found that there was no assignment in the Policy which had been attached to the plaintiffs' initial complaint. Upon review of the developed record, the court finds that the language of the Plan operates as an assignment.

"As a general rule, terms of art are not required for a valid assignment." *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993)(Alito, J.)(internal

quotations omitted). The parties do not dispute that a valid assignment requires intent at the time of the assignment. *See Huff v. Nationwide Ins. Co., 167 B.R. 53, 60 (W.D. Pa. 1992) aff'd, 989 F.2d 487 (3d Cir. 1993)*(quoting *Brager v. Blum, 49 B.R. 626, 629 (E.D.Pa. 1985)*("[t]o effect a legal assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights"). Moreover, "Pennsylvania law allows an insured to assign to the injured plaintiff its rights against its insurer." *Gen. Refractories Co. v. First State Ins. Co., 862 F. Supp. 2d 382, 390 (E.D. Pa. 2012)*(citing *Egger v. Gulf Ins. Co., 588 Pa. 287, 303, 903 A.2d 1219, 1229 (2006))*.

The court finds that the language of the Liquidation Plan demonstrates intent on behalf of ACCS to assign its right to proceed against the defendant to the plaintiff class. The Liquidation Plan reads, in pertinent part:

> [n]otwithstanding anything herein to the contrary, the PA Class Action Representatives shall be authorized to pursue a declaratory relief action against the Debtor's insurance carrier to determine whether the monetary claims asserted in the PA Class Action, and settled herein, are covered by the Debtor's prepetition insurance...the PA Class Action Representative may immediately proceed to enforce the Judgment solely against the Insurance Carrier...for recovery of any and all applicable insurance proceeds.

(Doc. No. 70, Att. 6 at 27). This language vests the plaintiff class with all rights ACCS would have to pursue in the collection of insurance proceeds. ACCS was in bankruptcy and therefore without means to engage litigation to define the scope of its insurance coverage. By "authorizing" the plaintiff class

20

to pursue a declaratory judgment and recover any and all applicable insurance proceeds, ACCS effectively transferred all rights it had in one of its sole remaining assets, the Policy. The court finds this to be the manifestation of ACCS's intent to assign its rights in the Policy to the plaintiff class to satisfy the proof of claim. As such, the court finds that the plaintiffs' claims may proceed against the defendant as assignees of the Policy.

### ii. Duty to Indemnify

#### a. Unfair Trade Practices Exclusion

The defendant asserts that the Judgment cannot be enforced because the Policy excludes coverage for claims arising under an unfair trade practice statute. Section III(A)(13) of the Policy excludes from coverage "any Claim...based upon, arising from, or in consequence of allegations of ... unfair trade practices...or any similar provision of any federal, state, or local statutory law or common law anywhere in the world." (Doc. No. 70, Att. 1 at 7). In the *Cataquet* Action, before the Bankruptcy Court, and the instant case, the plaintiffs have alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), the Pennsylvania Fair Debt Credit Extension Uniformity Act ("PFCEUA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. (Doc. No. 20 at 8).

The defendant now claims that references to state law and use of state

law statutory damage schemes as part of the settlement negotiations and judgment calculations indicates that the basis of recovery stems entirely from state law claims which are not covered under the Policy. The court agrees that the clear language of the Policy excludes the state law claims raised under the PUTPCPL, but does not find that references to state law necessarily exclude recovery under the PFCEUA or the FDCPA.

The FDCPA, PFCEUA and PUTPCPL are closely related statutes. The FDCPA is designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Mergliano v. MGC Mort. Inc.*, 2011 WL 5105440 at *3 (E.D.Pa. Oct. 26, 2011)(citing 15 U.S.C. §1692(e)). The PFCEUA similarly defines "unfair or deceptive acts or practices with regard to the collection of debts." 73 Pa. Stat. Ann. §2270.2. Therefore, "[w]ith respect to debt collectors, where a plaintiff states a claim for a violation of the FDCPA, he has also stated a claim for a violation of the Pennsylvania FCEUA." *Mergliano*, 2011 WL 5105440 at *3-4 (E.D. Pa. Oct. 26, 2011). The PUTPCPL protects against "unfair methods of competition" and "unfair or deceptive acts or practices" and requires a showing that a "defendant engaged in deceptive conduct and that plaintiff, in justifiably relying on such conduct, suffered an ascertainable loss." Id.; 73 Pa.

C.S. §§ 201-2(4), 201-9.2. In the context of debt collectors, however, "if a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the ... Unfair Trade Practices and Consumer Protection Law." 73 Pa. Stat. Ann. § 2270.5(a) The court agrees that the plain language of the Policy excludes coverage for unfair trade practices claims, such as those arising under the PUTPCPL. Nevertheless, the court finds that the FDCPA and PFCEUA claims are not unfair trade practice statutes and are therefore not similarly excluded.

The defendant alleges that the damages sought in the proof of claim, which makes reference to state law and statutory damages is evidence that the plaintiffs claims before the Bankruptcy Court were solely based on state unfair trade practice laws. (Doc. No. 72 at 20). The defendant fails to note that the calculation is relegated to a footnote while the first line of the "Explanation of Basis of Claim" reads: "[a]ctual and statutory damages and accrued attorneys' fees and costs, for violations of the Fair Debt Collections Practices Act, 15 U.S.C. §1692 et seq. and Pennsylvania state law..." (Doc. No. 70, Att. 3 at 3). The court finds this language to be a clear indication of the plaintiffs' intent to proceed before the Bankruptcy Court on both FDCPA and state law claims and will not preclude all recovery based on an initial calculation. Moreover, the Judgment before this court contains no indication that the award was the result of liability arising under federal or state law, nor does it

23

reflect whether state law was the basis of the calculation of the amount. In fact, the Judgment did not adopt the plaintiffs initial calculation of over four million dollars in damages, obscuring even further what effect, if any, the plaintiffs' calculation had on the Bankruptcy Court's damage award determination. Finally, having found that claims under the PFCEAU are not excluded, use of the PFCEAU's statutory damage scheme does not prohibit coverage under such a calculation. As such, the court finds that the recovery is not precluded by the Judgment's reference to state law.

### b. ACCS Absolved from Payment

The defendant alleges that it has no duty to indemnify under the Policy because the Liquidation Plan absolved ACCS from having to pay the Judgment and, as such, there is no cognizable "loss" under the Policy. In support of this conception of insurer liability, the defendant relies entirely on a decision from the United States Court of Appeals for the Eighth Circuit, applying Missouri law, in which Federal Insurance Company was not obligated to indemnify after a bankruptcy judgment absolved the insured from payment. *See U.S. Bank Nat't Assoc. v. Fed. Ins. Co.*, 664 F.3d 693 (8th Cir. 2011). The plaintiffs offer more persuasive case law from the United States District Court for the Eastern District of Pennsylvania. In *General Refractories Co. v. First State Ins. Co.*, 863 F.Supp.2d 382 (2012), the court traced Pennsylvania public policy in favor of settlements in enforcing an insurer's duty to indemnify

after a settlement reached between the plaintiff and the insured had relieved the insured of its obligation to pay.

Ultimately, however, understanding the Plan as an effective assignment by ACCS to the plaintiffs of the rights to pursue "any and all applicable insurance proceeds" simplifies the issue. As the court noted in *General Refractories* and as discussed above, "Pennsylvania law allows an insured to assign to the injured plaintiff its rights against its insurer." *Gen. Refractories*, 862 F. Supp. 2d at 390. In examining Pennsylvania case law, the General Refractories court further noted the nature of a settlement reached between an injured plaintiff and an original tortfeasor in *Alfiero v. Berks Mut. Leasing Co.*, 347 Pa. Super. 86, 89, 500 A.2d 169, 170 (1985). The court held that the "[injured plaintiff] did not agree to release [the tortfeasor] from further liability. Its agreement was to seek recovery of an agreed debt from a specific asset, *i.e.*, the contractual rights owed to [the tortfeasor]." *Gen. Refractories*, 862 F. Supp. 2d at 390. In addition, the court found public policy falls against placing limits on the duty to indemnify in situations "[w]here defendant's have denied coverage and the only valuable asset the insured may have is its cause of action against its insurers." *General Refractories*, 862 F.Supp.2d at 391 (citing *Trustees of the Univ. of Pa. v. Lexington Ins. Co.*, 815 F.2d 890 (3d Cir.1987). The court finds this understanding of the assignment of rights in an insurance contract to be persuasive. Here, the bankrupt ACCS settled with the plaintiff

class and turned over its right to pursue one of its sole remaining assets, the Policy. The Liquidation Plan was an agreement designed to confer the right to any insurance proceeds to the plaintiffs because ACCS had few or no other assets. It was not an agreement designed to absolve ACCS of liability, financial or otherwise, for the underlying conduct. As such, the court finds the coverage is not barred by the "absolved from payment" provision of the Policy.

### c. Certain Types of Relief Not Covered Under Policy

The defendant's challenges to the inclusion of "illegal fees paid to" and "statutory damages" in the Judgment. Neither the Judgment nor the Liquidation Plan include any indication that the amount of the award was based in any part on an attempt by the court to provide restitution for amounts paid to ACCS by members of the plaintiff class or as punitive statutory damages. The court, therefore, cannot issue a ruling regarding any appropriate decrease in the Judgment amount in this case nor would it because the Bankruptcy Court has retained jurisdiction over such questions. Nevertheless, the court will make findings as to the relevant aspects of the scope of the Policy's coverage.

### 1. Fees Paid

The defendant argues that under section II(L)(iv) of the Policy, no coverage is available for "the return of fees or other compensation paid to the Insured." (Doc. No. 70, Att. 1 at 5). The defendant argues that "compensation

paid to the Insured" includes any sums the plaintiffs allege were improperly paid by members of the plaintiff class to ACCS after receiving illegally overbearing notices. The plaintiffs claim that the defendant was well aware of ACCS business and therefore the Policy should be read to anticipate payment of damages for wrongly collected amounts as part of the reasonable expectation of the Policy's coverage. The defendant argues that requiring an insurer to pay restitution for amounts the insured collected pursuant to illegal practices would result in a windfall. The defendant argues that an insured could collect fees and make profits through illegal conduct and then rely on an insurance policy to repay the ill-gotten amounts. Though the defendant offers case law from around the country that shares its concern with allowing individuals to essentially insure against their own illegal acts, Pennsylvania courts and federal courts applying Pennsylvania law have taken a narrower view of this public policy concern. *See Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F.Supp.2d 444,552-555 (M.D.Pa. 2007). In *Westport*, a defendant insurance company relied on the Pennsylvania Supreme Court's holding in *Central Dauphin School District v. American Casualty Co.*, 493 Pa. 254, 426 A.2d 94 (1981), in which an insurance company was not required, based on public policy, to cover a court-ordered refund of taxes which the school district had collected through an unlawful tax measure. *Id.* at 453. In *Central Dauphin*, the Pennsylvania Supreme Court voiced its concern over the creation of

27

windfalls for those who profit from illegal acts; however, a line of cases following *Central Dauphin* dramatically limited the scope of the holding. Specifically, in *Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 648 A.2d 755, 760-61 (1994), the Pennsylvania Supreme Court held that only in the "clearest cases" should public policy be the basis for altering the terms of a contract. *Westport*, 523 F. Supp. 2d. at 452. Then, in *BLaST Intermediate Unit 17 v. CNA Insurance Co.*, 544 Pa. 66, 674 A.2d 687, 691 (1996), the Pennsylvania Supreme Court held that "public policy did not relieve an insurer from its obligation to indemnify the insured for losses incurred as the result of the insured's violation of a federal statute." *Id*. In the instant case, the court finds that there is no windfall to the now bankrupt ACCS. Neither ACCS nor any subsequent incarnations of its corporate persona stand to collect any of the proceeds from the Policy. Rather, it is the plaintiffs who seek damages for the wrongful acts of ACCS. In light of Pennsylvania's limited use of public policy to bar insurance coverage and the finding that there is no possibility of windfall to the tortfeasor in this case, the court will deny the defendant's motion with respect to the "fees paid" provision of the Policy.

## 2. Statutory Damages

The defendant argues that statutory damages constitute penalties that are excluded under section II(L)(iii) of the Policy which states: "a Loss does not include...taxes, fines or penalties imposed by law." (Doc. No. 70, Att. 1 at

5). The remedy provision of the PFCEUA, [73 Pa. C.S. §2270.5](), incorporates by reference the damage provisions of the PUTPCPL, [73 Pa. C.S. §201-9.2](), which provides both compensatory and punitive damages and states that an individual:

> may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

[73 Pa. C.S. §201-9.2](). The defendant argues that under this statute, in cases where there was minimal or no injury, a plaintiff will still be awarded $100. Therefore, the defendant argues, this statutory structure, which ensures a minimum damage award even if no actual damage is show, operates as a penalty.

To determine whether such damages are penal in nature it becomes critical to understand the nature of and relationship between the damage provisions of the relevant statutes. The PFCEAU specifically bars any double recovery under the FDCPA and the PFCEAU. *See [Piper v. Portnoff Law Associates](), 216 F.R.D. 325, 328 (E.D. Pa. 2003)*; [73 Pa. C.S. § 2270.5(c)]() ("Remedies available for violation of this act and the Fair Debt Collection Practices Act ... shall not be cumulative, and debt collectors who violate this act and the Fair Debt Collection Practices Act shall not incur cumulative penalties."). "Although a plaintiff may not recover under both the state and

29

federal laws, neither law bars a plaintiff from proceeding under both statutes before he or she chooses the state or federal remedy. *Id.* Therefore, to the extent that the plaintiffs pursue claims under the FDCPA in addition to the PFCEUA, the statutory damage provisions of PFCEUA will not be applied upon an award under the FDCPA. However, should an award be based on the PFCEUA solely, the statutory damage provision could be used in calculating a class award.

Neither party has presented, nor has the court been able to identify, any case law directly addressing the nature of statutory damages under the PFCEUA. The defendant's argument relies in essence on the notion that it has no duty to indemnify the plaintiffs because "case law suggests that an exclusion for fines and penalties, where those terms are undefined in the policy, allows an insurer to deny coverage when the item to be covered is punitive, rather than merely compensatory." *Carey v. Employers Mut. Cas. Co.*, 189 F.3d 414, 419 (3d Cir. 1999). The court finds, however, that the statutory damages requested under the PFCEUA are compensatory in nature and are not penalties which would be excluded under the Policy. The defendant relies on *Whole Enchilada, Inc. v. Travelers Property Cas. Co. of America*, 581 F. Supp. 2d 667 (W.D. Pa. 2008), in which the court found that statutory damages under the Fair and Accurate Credit Transactions Act ("FACTA") for the illegal publication of portions of the plaintiffs' credit card information were considered punitive because they required no showing of

actual injury. The Western District examined the definition of damages as "compensation for a legal injury sustained." *Whole Enchilada, Inc.*, 581 F. Supp. 2d at 703. The court acknowledged that statutory damages are "distinguished from the legal meaning of damages" and that "[s]tatutory damages are generally awarded in place of actual damages, where no actual injury is alleged." *Id.* (citing *Schnall v. Amboy National Bank*, 279 F.3d 205, 215 n. 5 (3d Cir.2002). The Western District relied on this distinction and found that statutory damages under FACTA were punitive in nature because they required no showing that the publication of the plaintiffs' credit card information led to any actual injury. *Id.* at 704.

The court finds the potential risk of harm posed by publication of credit card information to be markedly different from the type of harm that occurs when an individual personally receives an overbearing collection notice. When credit card information is improperly published it exposes an individual to potential misuse by identity thieves. Therefore, absent a showing of actual damage in the form of misappropriation of ones identity or account, there has been no injury to the alleged victim, merely the risk of injury. The Western District's holding that the statutory damages under the FACTA are punitive in nature follows because the goal is to encourage those who publish credit card information to take additional care and avoid exposing individuals to unnecessary risks. When an individual receives a notice that violates the FDCPA or PFCEUA, however, they are instantly affected and a legal injury is

sustained. If the person is moved to act in compliance with the illegal notice they can demonstrate actual injury. If they merely suffer distress from the notice, they have suffered an injury but not one that is easily shown. As such, the court finds the statutory damage provision of the PFCEUA provides for administrative efficiency in ascertaining damages to individuals. As with many statutes, the damage provision has a deterrent effect but the fundamental goal is to compensate those who suffer legal injury at the hands of a tortfeasor.

### d. Acts Within Policy Period

The defendant argues that even if the Policy provides coverage for ACCS's allegedly illegal conduct, the Policy would only cover violations during the one year period during which the defendant insured ACCS. The court agrees. The Policy provides coverage for claims made and reported to the defendant "for Wrongful Acts committed by the Insureds...on or after the Prior Acts Date...and before the Policy terminates." (Doc. No. 70, Att. 1 at 3). The Prior Acts Date is defined elsewhere in the Policy as October 29, 2007. (Doc. No. 70, Att. 1 at 1). The parties do not dispute that the Policy coverage period was October 29, 2007 to October 29. 2008.

The Judgement, however, reflects a larger class of individuals based on a unlimited temporal scope. The Judgment defines the "PA Class Action Claimants" as:

the holders of PA Class Action claims and consist of all individuals who have been informed by Debtor American Corrective Counseling

Services, Inc. that they have or allegedly have violated the provisions of the Pennsylvania Crimes Code pertaining to the issuance of bad checks, 18 Pa. C.S. §4105, and have been subject to debt collection as a result.

(Doc. No. 70, Att. 7 at 18). The parties do not dispute that ACCS operated in Pennsylvania from 2001 to 2009. Therefore, the Judgment's inclusion of "all individuals who have been informed by ACCS..." creates a class far larger than those individuals contacted by ACCS during the Policy's one year coverage period.

The court finds the Policy to be clear that it only covers the actions of ACCS during the period from October 29, 2007 to October 29. 2008. As will be discussed further below, the court will not reject the Judgment for failure to allocate between covered an non-covered losses because it is the Bankruptcy Court that issued the judgment amount and has retained jurisdiction over challenges to the Judgment itself.

### iii. Allocation of Judgment

The court finds that the defendant's arguments that the plaintiff has failed to properly allocate which portions of the Judgment are covered by the Policy are not properly raised before this court. The Bankruptcy Court issued a judgment in the amount of $2,550,000.00 and authorized the plaintiff to seek a declaratory judgment regarding the insurance. The defendant now argues that the entire claim should fail because the plaintiffs have not specifically identified which portions of the amount are attributable to covered

and non-covered activities.

None of the cases presented by the defendant in support of its contention that the entire claim must fail for want of proper allocation involves a valid judgment like the one presently before this court. This is not a case where the court is asked to evaluate the independent agreement of the parties in settling their dispute. Rather, the Bankruptcy Court stewarded the resolution of the plaintiffs' claims, approved the settlement, and entered judgment on behalf of the plaintiff class. To the extent the defendant seeks to challenge the calculation of the judgment, its argument is with the Bankruptcy Court, not the plaintiffs at this stage of this proceeding.

### iv. Reasonableness of Settlement

The defendant argues that it has no duty to indemnify ACCS because the underlying settlement was unreasonable. Specifically, the defendant alleges that the settlement was the result of collusive acts by the plaintiff class representatives and now-bankrupt ACCS and that failures in the notice provided to class members undermined the Bankruptcy Court's confirmation of the plan.

Section K of the Order made specific findings as to the settlement the defendant now challenges. The Bankruptcy Court found that "[t]he settlement embodied by the Plan (including the settlements and treatments of the Class Action Claimants) is fair and equitable and reasonable under the

34

circumstances and all such settlements have been entered into without fraud or collusion." (Doc. No. 70, Att. 7 at 9). The defendant now alleges that the settlement was in fact collusive because ACCS, which was without assets, had no incentive to meaningfully negotiate the settlement. In addition, the defendant alleges that the class representatives may have misled the Bankruptcy Court as to the adequacy of the notice sent to class members and, therefore, misled the court as to the unanimity of support for the plan on which the court relied in determining the Plan was reasonable.

Yet again the defendant's arguments appear to seek appellate review that this court cannot offer. Under Federal Rule of Bankruptcy Procedure 9019(a), settlements must be approved by the Bankruptcy Court. The settlement underlying this action was duly approved and the Judgment before this court includes a specific finding of fact by the issuing court that the settlement was "fair and equitable and reasonable." Challenges to that determination are properly brought before the issuing court or appropriate appellate court. As such, the court will not disrupt the clear approval of the settlement by the Bankruptcy Court and will deny the defendant's motion with respect to the reasonableness of the settlement.

**CONCLUSION**

The court finds that the Judgment is valid; however, the court cannot

provide the ultimate relief the plaintiffs seek, the entry of judgment, because questions remain over which the Bankruptcy Court has retained jurisdiction. The court finds the class was properly certified by the Bankruptcy Court. In addition, the court finds no grounds on which to vacate the Judgment of the Bankruptcy Court. Finally, the court makes the following findings with respect to the scope of coverage of the policy: first, the Policy covers only acts that occurred during the policy coverage period; second, the Policy covers violations of the FDCPA and the PFCEUA, but does not cover claims arising under the PUTPCPL; third, the Policy covers damages in the form of fees paid to the insured; fourth, the Policy may cover statutory damages arising under the PFCEUA. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 24, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2010 MEMORANDA\10-0481-01.wpd